79 U.S. 307
 20 L.Ed. 402
 12 Wall. 307
 WADSWORTH
v.
WARREN.
 December Term, 1870
 
 ERROR to the Circuit Court of the United States for the Northern District of Illinois.
 The action in the court below was in covenent and brought by Wadsworth, who resided in New York but owned property at Chicago, against J. B. Warren and W. Fleming, to recover rent upon a written lease of the same, alleged to have been executed by the said Warren and Fleming.
 Fleming being a bankrupt, Warren alone defended. He appended to his plea denying that he owed the money demanded, a notice that he would give in evidence on the trial that he and one Osgood agreed, with John De Koven, the agent of the plaintiff, to rent the property mentioned, and that he signed the lease with the express understanding that Osgood should also sign it; that after he, Warren, signed the lease De Koven sent it to Wadsworth, the plaintiff, in New York, where it was executed by the plaintiff and returned to De Koven to be executed by Osgood, but that Osgood refused to execute it; that afterwards Fleming agreed with De Koven, as agent of the plaintiff, to take the premises for the same time and upon the same terms that the defendant and Osgood had agreed to take them; that when the lease was signed by Fleming the defendant objected to having his name on the lease with Fleming; that De Koven said it would make no difference, that he would release the defendant on the back of the lease; that he wanted to use the lease signed by the plaintiff and Warren, as it would obviate the necessity of sending to New York to get the plaintiff to sign a new lease; that De Koven delivered the lease to Fleming alone; that the defendant never took possession of the property demised, and never paid or was called upon for rent until after the bankruptcy of Fleming; that the defendant never consented to be jointly bound with Fleming, or to be bound at all by the covenants in the lease, and that it was expressly understood between the defendant and De Koven that 'he would, as agent of plaintiff, release defendant on the back of the lease before he delivered the same to Fleming.'
 The lease showed the signatures and seals of Warren (the defendant), Fleming (the bankrupt), and Wadsworth (the landlord and plaintiff), and their names were also inserted without erasures or interlineations in the body of it. It was dated the 20th of April, 1867.
 The defendant Warren did not set up that any portion of the rent had been paid, but sought to establish as a defence the facts set forth in the notice above referred to. He testified that Osgood and himself agreed to take the premises for five years, at $4800 a year, and that Osgood then went to Michigan, where he resided; that shortly after Osgood went, a Mr. Jenning came to the witness with a lease which he believed was in blank, and requested him to sign it, saying that he got up all the plaintiff's leases in this way and sent them to New York for his signature; that shortly after this he received a letter from Osgood informing him that he had sickness in his family, and requesting the witness to dispose of the lease; that he then went to De Koven and told him the facts as they were, not wanting, himself, to back out after he had signed anything. He further testified:
 'I told him I had found Mr. Fleming willing to take the property, and willing to give good reference. Mr. Fleming and I went down to see Mr. De Koven. Mr. De Koven said he would see about it. When Mr. Osgood came, we went over to see Mr. De Koven together. While we were talking about the lease, Mr. De Koven made the remark to Mr. Osgood, 'It won't make any difference to you; you haven't signed the lease.' I told him: 'Then,' says I, 'I won't accept the lease.' Mr. De Koven then said, 'Now, Mr. Warren, I will tell you what I will do; I will accept Mr. Fleming in here; put Fleming's name in the lease instead of Osgood's, and I will indorse a release of you on the back of the lease.' I told him that was all right. Mr. Fleming signed his name while I was there, and returned it to Mr. De Koven, and left it there. I haven't seen the lease since. I never had anything to do with the document. I told De Koven, as Osgood woult not sign the lease I would not accept. De Koven said he would put in Fleming's name instead of Osgood's, as Osgood hadn't signed it, and he would indorse to me a release on the back of the lease, giving as a reason for doing so, that it would save the time of sending the lease to New York.'
 This testimony was supported by that of Osgood and Fleming.
 On a duplicate of the lease, signed and sealed, like the other by Wadsworth (the landlord and plaintiff), and by Warren and Fleming, the following indorsement, executed by Fleming, appeared:
 'ASSIGNMENT.
 'State of Illinois, Cook County, ss.
 'In consideration of one dollar, to me in hand paid, the receipt whereof is hereby acknowledged, I have sold, assigned, and set over to the said William Fleming, all my right, title, and interest to the within lease; said Fleming assuming all liabilities under said lease, and releasing me, the undersigned, from any and all liabilities whatever under the same.
 'Given under my band and seal, at Chicago, April 27th, A.D. 1867.
 'J. B. WARREN. [L. S.]'
 On the other hand, De Koven, the plaintiff's agent, testified that Warren and Osgood, in the first instance, agreed to take the property upon the terms mentioned in the lease, that he had leases signed in blank by Wadsworth, that a lease was made out and that Warren signed it; that after the season for renting was over, Warren requested witness to release him and allow Fleming to take the lease; that the witness declined to do this, as Warren was the only person he looked to for payment of the rent, but consented to take Fleming in the place of Osgood; that the leases were then filled out in duplicate, and Warren and Fleming signed them; that he gave one to Fleming and Warren and retained the other, and that the assignment from Warren to Fleming was not on the duplicate at that time; and the witness testified distinctly that he did not agree to release Warren.
 The plaintiff requested the court to instruct the jury:
 'First. The jury will disregard all evidence given in behalf of the defendant tending to show any verbal agreement or understanding between De Koven and the defendant Warren, to the effect that De Koven would release Warren from the covenant in the lease, or that Warren should not be bound by the lease.
 'Second. The jury, upon the evidence given, should find the issue for the plaintiff.'
 But the court refused to give either of these instructions, and charged substantially as follows:
 'The lease as produced here presents a legal claim, prim a facie, and the defendant is bound by it; and if there was nothing more presented, Warren would be bound, because he, having signed the lease, would be considered in law to be the party to it, and prim a facie to have accepted it. If not accepted by Warren, he would not be bound to pay. If a lease was signed by Warren on condition that Osgood was to be a party to it, and if Osgood refused to sign it, with the knowledge of Wadsworth or his agent, De Koven, then Warren would not be bound to accept that lease. [If Warren refused to accept the lease with Fleming, and the agent of Wadsworth agreed that to save trouble of sending another lease to Wadsworth for his signature, if Warren would put his name to the lease he should not be bound, and that Warren did not accept the lease with Fleming, then Warren would not be bound on the last lease.]
 'Then come the witnesses on the part of the plaintiff. And then if all the matter is laid aside that was presented by the defendants' witnesses, and you take up the case upon the plaintiff's testimony, then, if the evidence as to the acceptance of the lease by Warren does not satisfy the jury that it was not accepted by Warren in the way I mention—then comes the alleged promise of De Koven, the agent of Wadsworth, that he would release Warren from the lease—that is, a verbal promise, not executed to this day; and if such was the agreement, then Warren would have to look to De Koven for a breach of that agreement, and would have no defence here.
 ['As to that assignment on the lease, if this was all the understanding between these parties, that Mr. Warren was not to be liable, there was his name, and it would show; and if Fleming wanted to dispose of it or do anything with it, he could not do it legally without Warren's consent. That assignment was proper to vest the whole interest on paper in the lease in Fleming, which probably was the object of it, the consideration being nominal]
 'You will have to apply the testimony. The best way I can instruct you is to take up that given on the part of the defendant, which we admit so as to satisfy the jury on the subject of acceptance; and then, if they are not satisfied with that, the mere verbal promise of De Koven to release Mr. Warren would not be good defence here, I think, but would leave Warren to turn over on De Koven for a breach of his promise; and that is the way, I suppose, the thing might turn possibly on your verdict for the plaintiff; but we leave the matter with you to make the best you can of the case.'
 To the parts of the charge within brackets the plaintiff excepted.
 
 Mr. J. Van Arman, for the plaintiff in error:
 
 The case, in its best view for the defendant below, shows that all parties intended that the lease should take effect as a legal instrument, and operate, in form, at least, as a demise to Warren and Fleming, and that Warren should be subsequently released from his covenants in the lease. The very term 'release' implies that the party who is to have the benefit of it has, at the time of receiving such benefit, already assumed an obligation from which he is thereby discharged; and the assignment of all his interest in the lease made by Warren to Fleming, seven days after the lease was made, shows that they both then understood that they were jointly vested with the title to the demised term. The question then is, whether a verbal agreement, at the time of the execution of a deed, that one of the parties to it shall be released from the covenants contained in the deed, or that he shall not be bound by these covenants, can be given in evidence to defeat an action brought for an alleged breach of them. It is settled by authorities both ancient and modern that it cannot be.*
 The lease, after it was signed and sealed by Warren and Fleming, was delivered by Fleming in Warren's presence to De Koven, the plaintiff's agent. When a deed is delivered to the grantee or obligee, and retained by him, he setting up that the delivery was absolute, parol proof that the delivery was conditioned or otherwise than absolute, is incompetent in a contest between such obligee and the obligor.
 The release was never executed, nor was De Koven ever called upon to execute or procure the execution of it. To be effectual it must have been evidenced by a sealed instrument executed by the plaintiff himself, or by his duly authorized agent. It will not of course be contended that a mere verbal agreement to release a party from his covenants can bar a suit for the non-performance of them.
 Messrs. E. Anthony and C. F. Peck, contra, submitted that there was no error in the charge, and that the verdict was warranted, and is supported by the testimony.
 Mr. Justice STRONG delivered the opinion of the court.
 
 
 1
 Were this case before us on a motion for a new trial we might feel constrained to send it back to another jury. But it has been brought here by a writ of error, and we can, therefore, reverse the judgment only for errors of law apparent in the record.
 
 
 2
 The testimony respecting the circumstances attending the transaction in question is contradictory. On the part of the defendant it is that he refused to accept the lease without having Osgood bound with him; that the plaintiff's agent agreed to take Fleming in his and Osgood's place, and agreed that when Fleming signed the contract he would indorse on it a release of Warren, saying it would avoid the necessity of sending a new lease to Wadsworth, the plaintiff, for his signature. On the other hand the plaintiff's agent denies that he promised to release Warren, and states that he told him he was the only man he looked to for the rent. He states further that the defendant brought Fleming to him, that both signed the lease and a duplicate thereof, and that the duplicate was delivered to Fleming and the defendant. The lease is dated April 20th, 1867, and on the duplicate retained by the plaintiff's agent there appears an assignment of all his interest in the lease by the defendant to Fleming. This assignment is dated April 27th, 1867, but it was evidently made on the day on which Fleming's signature to the lease was made, for there is no evidence that the duplicate retained by the plaintiff's agent was ever seen by the defendant after Fleming signed it. Coupling this with the evidence that De Koven, the plaintiff's agent, had agreed to take Fleming in the place of Osgood and Warren, and had said that signing the instrument in the manner in which it was signed, would avoid the necessity of sending a new lease to Wadsworth, the lessor, for his signature; coupling it also with the other evidence, given by the defendant himself, that he did not accept the lease, or deliver the deed, we think it was a question to be submitted to the jury whether the contract had ever been consummated, or, in other words, whether it had been delivered and accepted as the contract of the defendant. It was not, therefore, erroneous to refuse the instruction prayed for, namely, 'that the jury, upon the evidence given, should find the issue for the plaintiff.'
 
 
 3
 The other prayer of the plaintiff for instruction was substantially granted. The court, when speaking of the alleged promise of De Koven to release Warren from the lease, said it was a verbal promise not executed, and, 'if such was the agreement, Warren would have to look to De Koven for a breach of it, and would have no defence here.' And again the court said: 'The mere verbal promise of De Koven to release Mr. Warren would not be a good defence here, I think, but would leave Warren to turn over on De Koven for a breach of promise.'
 
 
 4
 The remaining exceptions taken to the charge cannot be sustained. It may be admitted, as contended for, by the plaintiff in error, that when a deed has been delivered, and the delivery has been accepted, a verbal agreement between the parties, made at the time of the delivery, or previous thereto, that one of them should be released from the covenants contained in the deed, cannot defeat an action at law brought for an alleged breach of those covenants; but the charge of the court was in harmony with this doctrine. It may also be conceded that there can be no conditional delivery of a deed to the grantee, or covenantee, therein named; but nothing in the charge intimated that there could be. The question submitted to the jury was, whether there had been any acceptance of the lease by the defendant. This was equivalent to submitting the inquiry, not whether the deed had been delivered on condition that Warren should be released afterward, but whether it had been delivered at all as the deed of the defendant. That such a submission was proper, in view of the evidence, we have already said.
 
 
 5
 JUDGMENT AFFIRMED.
 
 
 
 *
 See Sheppard's Touchstone, 59; Coke Littleton, 36; Whyddon's Case, Croke Elizabeth, 520; Countess of Rutland's Case, 5 Reports, 26; Philadelphia, Wilmington and Baltimore Railroad Co. v. Howard, 13 Howard, 334.
 Braman v. Bingham, 26 New York, 491.