**FEDERAL TRADE COMMISSION,**
Appellee,

v.

**BRITISH OXYGEN COMPANY, LTD.,**
**et al., Appellants.**

No. 74–1492.

United States Court of Appeals,
Third Circuit.

Argued May 13, 1975.

Reargued en banc Nov. 4, 1975.

Decided Jan. 21, 1976.

Lewis A. Kaplan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for appellants.

Shearman & Sterling, New York City, R. Franklin Balotti, Richards, Layton & Finger, Wilmington, Del., for Airco, Inc.

Potter, Anderson & Corroon, Wilmington, Del., for British Oxygen Co., Ltd., BOC Financial Corp., BOC Holdings, Ltd. and British Oxygen Investments, Ltd.

Calvin J. Collier, Gerald Harwood, Karl H. Buschmann, William A. Cerillo, Washington, D. C., and Bruce Thall, Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN and HUNTER, Circuit Judges.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

In 1973, Congress enacted § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b).[1] The statute gives the Federal Trade Commission power to seek preliminary injunctions in the district court, pending the outcome of administrative cease and desist proceedings, in certain cases where there is reason to believe that a law, the enforcement of which has been delegated to the Commission, is being violated or is about to be violated. The district court in the present case enjoined appellants Airco, Inc. and British Oxygen Company, Ltd., from engaging in a variety of activities, including disposing of any of Airco's assets (except in the ordinary course of business) without prior approval of the Commission.

We vacate that portion of the injunction from which Airco has appealed, as it applies to Airco, and remand the matter to the district court for further proceedings.[2]

### I

On February 26, 1974, the Federal Trade Commission (FTC) simultaneously commenced administrative proceedings and applied for a temporary restraining order and preliminary injunction against British Oxygen Company, Ltd., and three of its subsidiaries (BOC) and against Airco. In substance the administrative complaint and application for injunction charged Airco with violation of § 5 of the Federal Trade Commission

1. 15 U.S.C. § 53(b)

   (b) Whenever the Commission has reason to believe—

   (1) that any person, partnership or corporation *is violating* or is *about to violate, any provision of law enforced by the Federal Trade Commission,* and

   (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—

   the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond

   . . . . .

2. Appellant Airco has expressly limited its attack on the injunction to Paragraph B. Before the panel hearing of this case, counsel for appellant BOC informed the court and all counsel by letter that BOC "do[es] not intend to file a brief or otherwise prosecute this appeal."

Act, 15 U.S.C. § 45,[3] and BOC with violations both of § 5 of the Federal Trade Commission Act and of § 7 of the Clayton Act, 15 U.S.C. § 18.[4] The asserted violations arose from BOC's acquisition, through public tender offer, of 35% of Airco's common stock. In the Commission's view, the acquisition was likely to lessen *actual* competition in the inhalation anesthetic equipment and inhalation therapy equipment markets and likely to lessen *potential* competition in the industrial gas market and in the medical pipeline market. Evidence of the asserted violations appeared in the July 25, 1975 agreement between BOC and Airco. The parties agreed to exchange any confidential information, including technical data and know-how, necessary to evaluate the desirability of the proposed tender offer. As a result of this exchange of business data, Airco in a December 10, 1973 memorandum consented to BOC's proposed tender offer and to BOC's representation on the Airco board.

The Commission's § 5 complaint against Airco was based on Airco's cooperation and facilitation of an allegedly illegal stock acquisition by BOC.

BOC is a large international corporation, the second largest world producer of industrial gas, an 8% holder of the domestic inhalation anesthetic equipment market and a significant European manufacturer and distributor of therapy equipment and medical pipeline systems. In two of these fields, inhalation therapy and inhalation anesthetic equipment, BOC or a subsidiary is an actual competitor of Airco. In the other markets, the Commission characterized BOC as a po-

tential entrant. BOC is allegedly one of the few corporations with sufficient financial resources to enter the United States industrial gas or medical pipeline markets despite significant domestic concentration and high entry barriers.

Appellant Airco is a highly diversified corporation. It is the second largest domestic industrial gas producer with a 17% market share, and therefore, a potential competitor of any BOC venture in the United States industrial gas market. Prior to the tender offer, Airco was the largest domestic producer in inhalation anesthetic equipment with a 35% market share and the second largest producer of inhalation therapy equipment with an 11% market share. Since BOC, through subsidiaries, had already entered into these domestic markets, Airco and BOC were direct competitors. Airco, in turn, had a 50% share of the domestic medical pipeline market, making it the leading firm in that market. BOC, with substantial European sales, was a potential entrant in the medical pipeline market.

Despite the fact that Airco engaged in lines of commerce identical to those of BOC, Airco alleges, and the FTC does not disagree, that only a portion of its assets are devoted to these endeavors. Sixty-four percent of Airco's assets are devoted to lines of commerce which are not competitive, either actually or potentially, with those of BOC.[5]

On the basis of a probable anti-trust violation, the district court, after a hearing, issued a preliminary injunction under § 13(b) on March 8, 1974.[6] BOC and Airco were ordered to maintain Airco as

---

3. § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) provides:

   (a)(1) Unfair methods of competition in commerce, and unfair or deceptive acts of practices in commerce, are declared unlawful.

4. § 7 of the Clayton Act, 15 U.S.C. § 18, in relevant part prohibits a corporation engaged in interstate commerce from acquiring "any part of the [stock] or assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be

substantially to lessen competition, or to tend to create a monopoly."

5. Airco's other divisions include the following: Cryogenic Division, Alloys Division, Speer Carbon-Graphite-Division, Speer Electronics Division, Temescal Division, Vacuum Metals Division and Viking Division (Appellant's Brief at 11).

6. The district court preliminarily enjoined BOC and its subsidiaries, Airco and all directors, employees, agents, successors of the two companies to:

a separate entity, to refrain from confidential communications, to refrain from influencing Airco's independent judgment, and in all ways to hold separate the two companies.

For purposes of this appeal, our focus is directed solely on the application to Airco of Paragraph B of the injunction,[7] which ordered both BOC and Airco to:

> B. *Preserve and protect all assets of Airco and refrain from disposing of or encumbering such assets* except in the ordinary course of business, and refrain from commingling with any other assets of BOC or its subsidiaries, without prior approval of the Commission. (Emphasis added.)

The Commission, by a later order of the district court, was ordered to approve or disapprove any proposed disposition of assets by Airco within fifteen days.

## II

§ 13(b) requires that the Commission show the district court that it has "reason to believe" a violation has occurred or will occur and that, upon "weighing the equities and considering the Commission's likelihood of ultimate success," a preliminary injunction is "in the public interest."

The fundamental dispute between the parties concerns the scope of activities which can be enjoined if the required showing is made. The Commission's position has been that in an acquisition case, an injunctive provision like Paragraph B can be justified by a showing that the Commission would otherwise be unable to secure complete relief via a subsequent divestiture order. Airco, on the other hand, argues that § 13(b) can *only* be invoked to prohibit actions which are themselves violative of a statute enforced by the Commission. We find it unnecessary to resolve this dispute, since in our opinion Paragraph B cannot be justified on the record here under either view.

## III

We first consider Airco's allegation that the district court's fact findings do not satisfy Rule 52(a), Fed.R.Civ.P., which provides that:

> . . . in granting or refusing interlocutory injunctions, the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

The district court's findings were so limited as to be inadequate under Rule 52(a). Only one of the district court's

A. Maintain Airco as a viable separate and independent company and to make no changes in its operations likely to hinder a future divestiture of Airco, including a merger, consolidation or acquisition of any equity interest.

B. Preserve and protect all assets of Airco and refrain from disposing of or encumbering such assets, except in the ordinary course of business, and refrain from commingling them with any other assets of BOC or its subsidiaries, without prior approval of the Commission.

C. Refrain from taking any steps to implement any provision of the agreements between Airco and BOC, dated July 25, 1973, and December 10, 1973, respectively, except for Paragraph 4 of the December 10th agreement.

D. Refrain from making available or communicating to each other any confidential or proprietary information, including customer lists, trade secrets, fórmulas, know-how or manufacturing processes of

each party, except this injunction shall not prohibit Airco and BOC from operating under any license agreements between them which were outstanding prior to July 1, 1973 or prohibit them from engaging in normal sales and purchase activities with each other in a volume not in excess of that which existed prior to July 1, 1973.

E. Retain separate and unencumbered all shares of Airco which BOC may own, acquire or control.

F. Refrain from attempting to influence or interfere with Airco's independent judgment on any matter so as adversely to effect [sic] the competitive position of Airco vis-a-vis BOC or any of its subsidiaries.

G. Refrain from transferring any shares of stock or other securities of Airco from BOC Financial to BOC or any other entity or person unless such transferee shall subject itself to the jurisdiction of this Court.

7. See footnote 2, *supra.*

four limited factual findings makes *any* reference to Airco. In that finding, the district court states:

> 3. That the Commission has made a "proper showing" of a "likelihood of ultimate success" under § 13(b) of the Federal Trade Commission Act that BOC's acquisition of Airco's stock may be found to be in violation of Section 7 of the Clayton Act and Section 5 of the Federal Trade Commission Act, at the conclusion of its administrative proceedings now pending before it. (Appendix at 195–196.)

We deem the lone finding insufficient to support the broad injunction issued against appellant Airco under either theory of the scope of § 13(b). Finding of fact number three does not connect Airco with any violation of the antitrust laws, nor does it demonstrate a need for *all* of Airco's assets to be preserved to guarantee that the Commission would be able to achieve whatever relief it may be shown to be entitled to. Secondly, there is no means for the reviewing court to determine what evidence served as the basis for the injunction. For this reason alone, a remand would be appropriate. *O'Neill v. United States,* 411 F.2d 139 (3d Cir. 1969); *Fehringer v. Bluebeard's Castle,* 395 F.2d 851 (3d Cir. 1968).[8]

### IV

But our concern with the proceedings in the district court goes beyond the failure to present adequate findings of fact. While it is not the proper role of this court to make findings of fact in the first instance, we have reviewed the record.

Our examination raises serious doubts as to whether there was sufficient evidence from which findings justifying the relief granted *could* have been made. Since these doubts persist even under the more expansive reading of § 13(b) urged by the Commission, we once again emphasize that we do not decide the statutory interpretation question.

### V

For the foregoing reasons, Paragraph B of the injunction against appellant Airco will be vacated and the case will be remanded to the district court for further proceedings consistent with this opinion.

ROSENN, Circuit Judge (concurring).

In enacting section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), Congress empowered the Trade Commission to seek a preliminary injunction pending the outcome of administrative cease and desist proceedings "whenever the Commission has reason to believe" that a law enforced by the Commission is about to be violated or is being violated, and upon a showing that injunctive relief is in the public interest. Unfortunately, the district court's findings do not satisfy Rule 52(a), Fed.R. Civ.P., and do not establish that Airco has committed a violation of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). We may look to a court's opinion to supplement its findings, *see Hooper's Estate v. Gov't of the Virgin Islands,* 427 F.2d 45, 48 (3d Cir. 1970), but the opinion written when the district court denied Airco's motion to modify the disputed restraint offers little aid in this respect. I therefore concur with the holding of the majority that we must vacate and remand.

I am constrained to disagree with part IV of the majority opinion, however, because I do not share their reservations as to whether there is sufficient evidence on this record from which findings justifying the relief granted could have been made. In any event, I would defer an analysis of the sufficiency of the evidence supporting the grant of the preliminary injunction until the district

---

8. Airco further alleges that the district court's fact findings are verbatim copies of those prepared by the Federal Trade Commission. In view of our determination that the findings are, at any rate, inadequate under 52(a), we find it unnecessary to discuss this contention.

court has made the required findings on remand.

Chief Judge SEITZ joins in this concurring opinion.